**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License**

In the matter of:

☐ The application for license as a/an _____ , filed by:

or

☑ License Number 4-31-025-07-6H-03410 _____ as a/an

Manufacturer in Firearms Other Than Destructive Devices _____ , issued to:

Name and Address of Applicant or Licensee *(Show number, street, city, state and Zip Code)*

LMG Firearms, LLC
18 Locust St
Milford, OH 45150

Notice is Hereby Given That:

☐ A request for hearing pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5) was not timely filed. Based on the findings set forth in the attached document, your

☐ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

☐ 15 calendar days after receipt of this notice, or ☐ _____ ,

☐ license is suspended for _____ calendar days, effective _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

☐ licensee is fined $ _____ , payment due: _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

☑ After due consideration following a hearing held pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5), and on the basis of findings set out in the attached copy of the findings and conclusions, the Director or his/her designee concludes that your

☐ application for license described above is denied, pursuant to 18 U.S.C. § 923(d).

☐ application for renewal of license described above is denied pursuant to 18 U.S.C. 923(d), effective:

☐ 15 calendar days after receipt of this notice, or ☐ _____

☑ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

☐ 15 calendar days after receipt of this notice, or ☑ February 16, 2025 _____

☐ license is suspended for _____ calendar days, effective _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

☐ licensee is fined $ _____ , payment due: _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

If, after the hearing and receipt of these findings, you are dissatisfied with this action you may, within 60 days after receipt of this notice, file a petition pursuant 18 U.S.C. § 923(f)(3), for judicial review with the U.S. District Court for the district in which you reside or have your principal place of business. If you intend to continue operations after the effective date of this action while you pursue filing for judicial review or otherwise, you must request a stay of the action from the Director of Industry Operations (DIO), Bureau of Alcohol, Tobacco, Firearms and Explosives, at 230 West St Suite 400 Columbus, OH 43215 _____

_____ ,
prior to the effective date of the action set forth above. You may not continue licensed operations unless and until a stay is granted by the DIO.

Records prescribed under 27 CFR Part 478 for the license described above shall either be delivered to ATF within 30 days of the date the business is required to be discontinued or shall be documented to reflect delivery to a successor. See 18 U.S.C. 923(g)(4) and 27 CFR § 478.127.

After the effective date of a license denial of renewal, revocation, or suspension, you may not lawfully engage in the business of dealing in firearms. Any disposition of your firearms business inventory must comply with all applicable laws and regulations. Your local ATF office is able to assist you in understanding and implementing the options available to lawfully dispose of your firearms business inventory.

ATF Form 5300. 13
Revised September 2014

| Date<br>01/15/2025 | Name and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official<br>John Curtis, Director of Industry Operations | Signature *John Curtis* |
|---|---|---|

I certify that, on the date below, I served the above notice on the person identified below by:

☑ Certified mail to the address shown below.<br>Tracking Number: 9589 0710 5270 2133 4053 08    ☐ Delivering a copy of the notice to the address shown below.

| Date Notice Served<br>1/15/2025 | Title of Person Serving Notice<br>Executive Assistant | Signature of Person Serving Notice<br>*Therese Vaes* |
|---|---|---|
| Print Name and Title of Person Served | | Signature of Person Served |

Address Where Notice Served
18 Locust St Milford, OH 45150

Note: Previous Edition is Obsolete

ATF Form 5300.13
Revised September 2014

LMG Firearms LLC                                                                                          ATF Form 5300.13
FFL # 4-31-025-07-6H-03410                                                                                         Page 2

IN ACCORDANCE with 18 U.S.C. §§ 923(e) and 923(f) as well as 27 C.F.R. §§ 478.73 and 478.74, and upon review and consideration of the entirety of the administrative record which is comprised of the statements and exhibits provided by the parties at the hearing on this matter and fully incorporated herein, I hereby make the following findings and conclusions:

## I.      Introduction

LMG Firearms LLC ("Licensee") holds a Federal firearms license issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) pursuant to the Gun Control Act of 1968 (GCA), as amended, 18 U.S.C. Chapter 44, and the regulations issued thereunder, 27 C.F.R. Part 478.

In May 2023, ATF conducted a compliance inspection that resulted in findings of violations of the GCA and implementing regulations. On November 27, 2023, ATF issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine, ATF Form 4500 (5300.4) (Notice) to Licensee based upon reasonable belief that Licensee had willfully violated the GCA. On December 6, 2023, Licensee, timely requested a hearing to review that Notice. The hearing was conducted on May 21, 2024, at the ATF Cincinnati Field Office and via Microsoft TEAMS.

I, ATF Director, Industry Operations (DIO), John A. Curtis conducted this hearing. Dianna L. Bessemer, Division Counsel, Columbus Field Division, represented ATF and the DIO as the attorney for the Government. ATF Industry Operations Investigator (IOI) Andrew Beech was present for purposes of providing evidence on behalf of ATF. Matthew Hardoerfer as Owner/President and Responsible Person and Rikki Hardoerfer as a member of the LLC and Responsible Person appeared on behalf of the Licensee. The hearing was recorded by a court reporting service. ATF and Licensee offered statements and exhibits. The statements and exhibits introduced at the hearing constitute the record in this administrative proceeding.

## II.     Findings

Having reviewed the record in this proceeding, I make the following findings:

## Compliance History and Violations:

1.  ATF conducted an application inspection of Licensee on July 12, 2011. At that time, ATF reviewed the Federal firearms laws and regulations with Licensee. (Gov't. Ex. 2).

2.  Later, ATF conducted a compliance inspection in March 2014. The inspection revealed that Licensee failed to record proper information into its Acquisition and Disposition Record (A&D) and failed to obtain properly completed ATF Forms 4473 in Sections A & B. At the conclusion of the inspection, ATF issued a Report of Violations to Licensee, citing violations of 27 C.F.R. §§ 478.125(e), 478.124(c)(3)(iv), 478.124(c)(iv) and 478.124(c)(1). (Gov't. Ex. 3). As part of the inspection Licensee signed a second ATF Acknowledgement of Federal Firearms

LMG Firearms LLC                                                ATF Form 5300.13
FFL # 4-31-025-07-6H-03410                                                 Page 3

Regulations after reviewing requirements with ATF. (Gov't. Ex. 4).

3.  ATF conducted a second compliance inspection in 2015. During which ATF again reviewed the firearms laws and regulations, as evidenced by Licensee's signature on the Acknowledgement of Federal Firearms Regulations dated August 11, 2015. (Gov't Ex. 5).

4.  ATF conducted a third compliance inspection in 2019. During which ATF yet again reviewed the firearms laws and regulations, as evidenced by Licensee's signature on the Acknowledgement of Federal Firearms Regulations dated June 26, 2019. (Gov't Ex. 6).

5.  ATF conducted a fourth compliance inspection beginning on May 23, 2023. As a result of that inspection 19 violations were identified. A Notice was issued to Licensee setting forth eight willful violations associated with that inspection. (Gov't. Ex. 1). Those violations were the subject of the May 21, 2024, hearing and the within findings and conclusions.

6.  Violation #1: Licensee willfully failed to respond within 24 hours to a request from the National Tracing Center (NTC) for information regarding the disposition of a firearm, in violation of 18 U.S.C. § 923(g)(7) and 27 C.F.R. § 478.25a.

    a.  The Government, through statements by IOI Beech, established that Licensee failed to respond within 24 hours to a firearm trace request made on March 17, 2023.

    b.  When asked about the violation at the hearing, Mr. Hardoerfer stated that Licensee could not find the 4473 due to the fact that the record had been removed to his home and was subsequently damaged by a flood in the basement. As he explained, "I was wrong for having it off-location…Sometimes I would take stuff home to get it done because that's the only place I could get it done. Still not an excuse." (Tr. pg. 88).

    c.  Ms. Hardoerfer admitted knowledge of the trace request requirement when she explained, "we've had many other trace requests that we've never had an issue with." (Tr. 103). Despite Licensee's knowledge of the 24-hour deadline and a promise to provide the information when initially contacted on March 17, 2023, it was not able to produce the required information until more than two months later and only after multiple attempts culminating in an in-person visit by ATF.

    d.  I find this violation occurred and that Licensee's conduct was willful. Licensee was provided with guidance on "trace requests" during all four of the previous reviews of firearm regulations. (Gov't Ex. 2, 4, 5 and 6). Furthermore, Licensee was aware of its responsibility to familiarize itself with laws and regulations applicable to the Federal firearms license. (Tr. 107.) Licensee's inability to respond to the requested information in a timely fashion due to the improper removal of the record as well as

LMG Firearms LLC                                                    ATF Form 5300.13
FFL # 4-31-025-07-6H-03410                                                    Page 4

    its failure to be forthcoming about the problem demonstrate reckless disregard for maintenance of records and indifference to the importance of tracing firearms.

7. Violation #5: Licensee willfully failed to retain ATF Forms 4473 at the licensed business premises in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.121(a).

    a. The Government, through statements by IOI Beech and admissions by the Licensee established that Licensee did not retain at the licensed premise ATF Forms 4473s that were generated between September 5, 2019, and August 4, 2020. Licensee explained at the closing conference that records were taken to the Hardoerfer personal residence, and Mr. Hardoerfer "must have forgotten to return the records and misplaced them." (Gov't Ex. 7).

    b. Two more recent A&D books were similarly, improperly removed to the Hardoerfer's home. Fortunately, they were eventually recovered but not until almost a month after ATF initiated its inspection. At the hearing, Ms. Hardoerfer explained that the A&D books were not located or available for inspection until the conclusion of the inspection because "they were actually in – they were in a plastic binder in our basement from when we had moved and things had just got shuffled around." (Tr. 97).

    c. Licensee knew it must store required records at the licensed premise and acknowledged that failure to do so led to the tracing delay described in Violation 1. (Gov't Ex. 9), (Tr. 88, 103, 108-111).

    d. I find this violation occurred and that Licensee's conduct was willful. Licensee was provided with guidance on "record retention" during all four of the previous reviews of firearm regulations. (Gov't Ex. 2, 4, 5 and 6). Furthermore, Licensee was aware of its responsibility to familiarize itself with laws and regulations applicable to the Federal firearms license. (Tr. 107.) (Gov't. Ex. 11). Licensee admitted to keeping records off premise despite knowing that doing so was a violation of the regulations. As such, I find Licensee's conduct to willful.

8. Violation #7: On three occasions Licensee willfully transferred a firearm to an unlicensed person without first contacting the National Instant Criminal Background Check System ("NICS") and obtaining a unique identification number and/or waiting three business days, in violation of 18 U.S.C. § 922(t) and 27 C.F.R. § 478.102.

    a. Government, through statements by IOI Beech and exhibits, established that the violations occurred. Specifically, as to the first instance, a transfer of a firearm to Charles Curtis, is recorded on the ATF Form 4473 as taking place on December 27, 2022. (Gov't Ex. 12). The Form documents that Mr. Curtis signed and dated the Form 4473 in the "recertification" box on December 27, 2022, indicating that as the date of transfer. It should be noted that the A&D book also

LMG Firearms LLC                                                          ATF Form 5300.13
FFL # 4-31-025-07-6H-03410                                                        Page 5

reflects a disposition date of December 27, 2022. (Tr. pg. 111). However, the Form 4473 shows that the NICS check of Mr. Curtis resulted in a "delayed" response, prohibiting the transfer until Licensee received a "proceed" or waited three business days. The Form 4473 documents that three business days would elapse on January 5, 2023 and that a "proceed" was transmitted to Licensee on January 12, 2023. Based upon all of the information recorded on the Form 4473, including both Licensee's signature and the customer's signature, Licensee's December 27, 2022, transfer was without a "proceed" response and without waiting the requisite three business days.

b.  Licensee suggested that the wrong date was entered on the Form 4473 and claimed that it did not believe the firearm was transferred without a valid NICS check. There is nothing to corroborate this explanation, and all the documentation, including the A&D book, supports the Government's conclusion of a December 27, 2022, transfer.

c.  Government, through statements by IOI Beech and exhibits, also established that the second and third cited instances occurred. The first of these two involved the transfer of two firearms to Micheal LaPlant. (Gov't Ex. 13). Pursuant to the information on the Form 4473, this transfer took place on March 31, 2023, after Licensee conducted a NICS check, documented a "proceed" response from NICS, and Mr. Hardoerfer executed the Form on behalf of Licensee. However, in box 27b. Licensee recorded a NICS transaction number as 102WEN002.[1] Per FBI NICS, this is not a valid transaction number. (Tr. 77 and Gov't Ex. 13). Thus, there is no evidence of a valid approval number

d.  The second similar instance refers to the transfer of one firearm to Fred Likes. (Gov't Ex. 14). Pursuant to the information on the Form 4473, this transfer took place on April 21, 2023, after License conducted a NICS check, documented a "proceed" response from NICS, and Mr. Hardoerfer execute the Form on behalf of Licensee. However, in box 27b. Licensee recorded an invalid NICS transaction number: 102XCDPB2. IOI Beech determined that this number was not generated by FBI NICS and was not associated with a background check.

e.  Since neither the LaPlant nor the Likes transaction numbers were valid, IOI Beech suspected that no NICS check was done and the "proceed" responses were as fabricated as the numbers. These suspicions were confirmed by a NICS audit log (a report from NICS that documents background checks run by licensees for a limited period of time) that covered the time frame in which both Mr. LaPlant and Mr. Like's Forms were completed. The audit log documented only one NICS check on the date of the LaPlant transaction; notably, that check was determined to be associated with a different purchaser. The audit log did not

---

[1]  The NICS transaction number is a unique number provided by NICS to the licensees associated with each valid background check inquiry.

LMG Firearms LLC                                                    ATF Form 5300.13
FFL # 4-31-025-07-6H-03410                                                    Page 6

record any NICS check run by Licensee on the date of the Likes transaction. (Tr. 20-121). IOI Beech further explained that the importance of and procedure for NICS checks are fully addressed during firearms regulations reviews including the need to properly record information on the Forms 4473. (Tr. 79). IOI Beech also noted that License obviously knew how to properly complete NICS checks as evidenced by his review of other Forms 4473s located at Licensee's premises. (*Id.*).

f.  IOI Beech stated that when he discussed these Forms with Licensee, Licensee suggested that the record was completed "at 3 am in the morning and he was just worried and freaked out and must have put the wrong information in." (Tr. 80 & 84).

g.  Licensee does not dispute the facts presented by ATF as to these violations. Its primary defense is the unsubstantiated claim that, despite all evidence to the contrary, valid checks were actually conducted but inaccurately recorded. I note that even if I found this defense credible, it in and of itself serves as an admission to regulatory violations of 27 C.F.R. § 478.124 and .125 for failure to properly maintain records. Licensee also indicated that it did not have a lot of "delayed" transactions in the past; however, this is immaterial as Licensee demonstrated its knowledge of the process by doing everything else right- other than the critical responsibility of waiting for an approval number or the three days- for the Curtis transaction. Licensee also blamed an overly busy work environment and human error for what it characterized as "mistakes."

h.  Given Licensee's past instruction by ATF and acknowledgement of legal requirements as well as its demonstrated ability to properly record information in cases of actual NICS checks, I find the violation occurred willfully. (Gov't Ex. 4, 5 and 6) (Tr. 107.) Additionally, I note that despite Licensee's attempts to minimize these violations as "mistakes," the significant impact is that firearms were transferred to persons who had not passed NICS checks and whose prohibited status was not known at the time of transfer. Therefore, the excuse that Licensee was "just too busy" to comply with legal requirements indicates further that Licensee was plainly indifferent.

9.  Violation #8: On two occasions, Licensee willfully made a false entry or representation with respect to any information required by the provisions of the GCA, in violation of 18 U.S.C. § 924(a)(3) and 27 C.F.R. § 478.128(c).

a.  Government, through statements by IOI Beech and exhibits, established that this violation occurred. Specifics regarding Licensee's documentation of false NICS transactions numbers on the Forms 4473s for Mr. LaPlant and Mr. Likes are provided above. (*See also* Gov't Ex. 13 & 14.) Nonetheless, I again highlight the fact that the NICS log shows no evidence that a NICS check was conducted

LMG Firearms LLC                                               ATF Form 5300.13
FFL # 4-31-025-07-6H-03410                                                 Page 7

for either transaction. As such, the numbers could not have been improperly recorded as Licensee appears to suggest. The numbers are instead completely fabricated.

b. At the hearing, Licensee admitted that "the bad NICS numbers is totally my fault, being too busy." He then attempted to minimize the mistakes as "human error." (Tr. 89). However, I do not find the excuse of human error credible since the numbers were wholly invented.

c. Licensee's past instruction by ATF and acknowledgement of legal requirements as well as its demonstrated ability to properly record information in cases of actual NICS checks support my finding that the violation occurred willfully. (Gov't Ex. 4, 5 and 6) (Tr. 107.) Additionally, I note that the intentional act of falsification by its very nature necessitates willfulness.

10. I make no findings as to Counts, 2, 3, 4, and 6 of the Notice of Revocation.

## Legal Standard

11. Pursuant to the GCA and as found at 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73, ATF may, after notice and opportunity for hearing, revoke a Federal firearms license when a licensee willfully violates the GCA and regulations promulgated thereunder.

12. Where a Federal firearms licensee knows its legal obligations and purposefully disregards or is plainly indifferent to these obligations, such violations are committed willfully. *Garner v. Lambert*, 2009 WL 27499709 (6th Cir. Sept.1, 2009). *Procaccio v. Lambert*, 233 Fed. Appx. 554 (6th Cir. 2007). *Appalachian Resources Dev. Corp. v. McCabe*, 387 F.3d 461 (6th Cir. 2004).

13. Carelessness does not serve to excuse the violations as a purposeful disregard or plain indifference to a known legal obligation is legally sufficient to show willfulness. At a certain point, "mere processing errors of little consequence… amount to reckless violations of known legal obligations." *Armalite, Inc. v. Lambert*, 544 F.3d 644, 649 (6th Cir. 2008).

14. There is no necessity that the government establish a licensee committed the violation as the result of a "bad purpose" or "evil motive" to establish that a violation occurred "willfully." *Appalachian Resources Dev. Corp.*, 387 F.3d at 464 (*citing Al's Jewelry & Loan, Inc. v. U.S. Dep't of Treasury*, 103 F.3d 128 (6th Cir. 1996)).

15. The government may prove that a false statement was made willfully by offering evidence that defendants acted deliberately and with knowledge that the representation was false. *See United States v. Hopkins*, 916 F.2d 207, 214 (5th Cir. 1990).

LMG Firearms LLC
FFL # 4-31-025-07-6H-03410

ATF Form 5300.13
Page 8

16. *Post hoc* remedial efforts have little bearing on a licensee's willfulness at the time of the violation. *CEW Properties*, 979 F.3d at 1281 n.12 (disregarding licensee's claim of no willfulness due to subsequent efforts to remedy noncompliance by compiling A&D records into a bound book); *see also Shawano Gun & Loan, LLC v. Hughes*, 650 F.3d 1070, 1079 (7th Cir. 2011) (noting that "workplace changes to ensure compliance with Federal firearms laws" following a revocation notice "come too late," and that the promise to "do better if given another chance is not an argument that reaches the merits of the case"); *Cucchiara v. Sec'y of Treasury*, 652 F.2d 28, 30 (9th Cir. 1981) (concluding that a licensee's attempt to "correct his faulty recordkeeping system, after the violations ... is immaterial to the question of willfulness at the time the violations occurred"); *Sturdy v. Bensten*, 129 F.3d 122 (8th Cir. 1997) (licensee's after-the-fact efforts to correct the specific violations cited are irrelevant to the issue of willfulness at the time the errors occurred).

**Application of Legal Standard**

17. Regarding the above violations, I do not find Licensee's explanations to be persuasive or valid. As a licensee since 2011, it knew of its obligation to respond to the trace, keep required records on premises and conduct NICS checks and yet it failed to do so. Likewise, it knew the ATF Forms 4473 cannot be falsified. Licensee's recent actions demonstrate a general, overarching deficiency in the conduct of business and recordkeeping based upon the excuse that Licensee was too busy. The resulting loss of some records as well as the falsification of information in an attempt to conceal Licensee's failure to comply with NICS requirements can reasonably be attributed to Licensee's indifference, carelessness and a lack of accountability.

18. For purposes of the regulatory provisions of the GCA, a "willful" violation is committed when Licensee knows of its legal obligations and purposefully disregarded or was plainly indifferent to those requirements. Here, Licensee assertion that violations were mere mistakes is unavailing.

19. A critical responsibility of a licensee is to help ensure that the Gun Control Act requirements are met, maintaining records, accurate completion of Forms 4473 and contacting NICS to do background checks are among those requirements. *See A-TAC Gear Guns Uniforms LLC v. U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 530 F.Supp.3d 1033, 1039 (D. Colo. Mar. 31, 2021) ("ATF cannot monitor every single firearms dealer at every moment. The Act's effectiveness thus rests largely on dealers' taking its [sic] regulations seriously."). This failure by Licensee to do so undermines the public safety directive of the GCA. Licensee's systemic problems with recording and maintaining compliant records, and its failure to properly conduct and record background checks, further undermine the essential purposes of the GCA. This deliberate indifference to requirements supports my finding that the violations were willful.

LMG Firearms LLC
FFL # 4-31-025-07-6H-03410

ATF Form 5300.13
Page 9

20. The courts have also uniformly held that "any single willful violation of the Federal statute or regulation controlling the firearms industry can be the basis for denying an application for a new license or revoking an existing license." *DiMartino v. Buckles*, 129 F. Supp.2d 824 at 832 *aff'd; DiMartino v. Buckles*, 19 Fed. App. 114, 2001 U.S. App. Lexis 20906 (4th Cir. 2001); *Appalachian Resources Dev. Corp. V. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco & Firearms*, 348 F. Supp.2d 1299, 1308 (S.D. Ala. 2004); *Article II Gun Shop v. Ashcroft*, 2005 WL 701053 (N.D. Ill. 2005); *Breit & Johnson Sporting Goods v. ATF*, 320 F. Supp. 671, 678 (N.D. Ill. 2004); *Cook v. Herbert,* 2004 U.S. Dist. Lexis 61 (W.D. Va. 2004); *Trader Vic's Ltd. v. O'Neill*, 169 F. Supp.2d 957, 963 (N.D. Ind. 2001).

21. Periodic compliance, such as a licensee's occasional adherence to regulatory obligations, also supports a finding of willfulness and corroborates Licensee's admissions that it had knowledge of the GCA's requirements. *CEW Properties*, 979 F.3d at 1280, *citing Simpson v. Att'y Gen.*, 913 F.3d 110, 115-16 (3d Cir. 2019) (noting that a licensee's "full compliance with [Gun Control Act] requirements in some instances belies his assertion that he did not understand those requirements," and his "inconsistent conduct suggests both that [he] knew of his obligations and was indifferent to complying with them.").

22. Courts have noted that record keeping and tracing firearms go hand in hand and in this case, Licensee's willful failure to properly maintain records resulted in the failure to respond to the trace. "The requirement of keeping accurate A & D records in the bound book is an important element of the Gun Control Act that makes it possible for licensees to respond quickly and accurately to tracing requests made in the course of criminal investigations." *See Franklin Gun Shop Inc. v. Gonzales*, 2006 WL 2263992 (unpublished) *quoting*: 18 U.S.C. § 923(g)(7); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 348 F.Supp.2d 1299, 1302 n. 2 (S.D.Ala.2004) *aff'd* 415 F.3d 1274 (11th Cir.2005); *RSM, Inc. v. Buckles*, 254 F.3d 61, 63 (4th Cir.2001). Information drawn from records kept by dealers is a "prime guarantee of the Act's effectiveness" in keeping firearms out of the hands of criminals, juveniles, and other dangerous persons. *Huddleston v. United States,* 415 U.S. 814, 825 (1974).

23. Consequently, "[i]mproper recordkeeping is a serious violation." *Fin & Feather Sport Shop, Inc. v. U. S. Treasury Dept.*, 481 F.Supp. 800, 806 (Neb. 1979) quoting *Huddleston v. United States*, 415 U.S. 814, 824 (1974). "Thus, a firearms dealer, by failing to keep the required records, seriously undermines the effectiveness and purpose of the Act and ultimately endangers society." *Fin & Feather*, 482 F. Supp at 806. ATF has the right to insist on total compliance with the GCA to retain the privilege of dealing in firearms. *Willingham Sports* at 1309 n.14 ("gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms."); *Dick's Sport Center, Inc. v. Alexander*, No. 2:04-CV-74482, 2006 WL 799178, at *5 (E.D. Mich. Mar. 29, 2006) (licensee's "failure to comply with exacting book keeping regulations may hinder the ATF's ability to perform its mandated function.")

LMG Firearms LLC                                                   ATF Form 5300.13
FFL # 4-31-025-07-6H-03410                                                  Page 10

24. Finally, there is no excuse that alleviates full compliance with a NICS check by this licensee. *See Abramski v. U.S.*, 573 U.S. 169, 180 (2014) (Federal gun law establishes an elaborate system of in-person identification and background checks to ensure that guns are kept "out of criminals and others who should not have them...."). It is imperative that licensees run background checks prior to the transfer of firearms so as to avoid rendering as meaningless the Congressional goal of "keeping 'firearms out of the hands of those not legally entitled to possess them.'" *Id.* at 181, *quoting Huddleston* at 824.

25. Accordingly, I conclude that the violations were willfully committed as Licensee knew and understood the legal obligations under the GCA but purposefully disregarded or was plainly indifferent to these known legal obligations as stated in the notice.

**III.    Conclusions**

Based upon factual findings and the entire record as applied to the legal standard set forth above, I find:

a. Licensee failed to comply with its legal obligations under the GCA as set forth in Violations 1, 5, 7 and 8;
b. Licensee had knowledge of its legal obligations;
c. Licensee acted with plain indifference and/or reckless disregard as to cited violations.
d. Licensee, LMG Firearms LLC willfully violated the GCA and is therefore not eligible to hold a Federal firearms license nor are Matthew or Ricki Hardoerfer entitled to serve as a Responsible Person on a Federal firearms license.

Due to the willful violations of the above listed statutes and regulations, and upon full consideration of the entirety of the administrative record, the Federal firearms license issued to LMG Firearms LLC is hereby revoked pursuant to 18 U.S.C. § 923(e), and Title 27, Code of Federal Regulations, § 478.74. See page 1 (ATF Form 5300.13) for effective date.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Washington, D.C.

www.atf.gov

## IMPORTANT NOTICE

### Selling Firearms AFTER Revocation, Expiration, or Surrender of License

Former Federal Firearms licensees who continue to sell firearms after the revocation, expiration, or surrender of their license must abide by federal law and regulations to ensure that they properly discontinue business and do not "engage in the business" of dealing in firearms without a license, in violation of 18 U.S.C. §§ 922(a)(l)(A) and 923(a).

As provided by 27 CFR 478.57 and 478.78, upon termination of license, or final disposition of license proceedings to terminate the license, former licensees must, within 30 days, or such additional period approved by ATF for good cause, either:

> **(1) Liquidate the former licensee (business) inventory by selling or otherwise disposing of the firearms to a licensed importer, licensed manufacturer, or licensed dealer for sale, auction, or pawn redemption; or**
>
> **(2) Transfer the former licensee inventory to a responsible person of the former licensee to whom the receipt, possession, sale, or other disposition is not prohibited by law.**

Transfers of former licensee inventory to a responsible person or to another licensee must be appropriately recorded as dispositions, in accordance with §§ 478.122(b) (importers), 478.123(b) (manufacturers), or 478.125(e) (dealers), prior to delivering the records after discontinuing business consistent with § 478.127.

Any such transfers, however, do not negate the fact that the firearms were repetitively purchased, and were purchased with the predominant intent to earn a profit by repetitive purchase and resale. Except for liquidation of former licensee inventory to a licensee within 30 days (or approved period), or occasional sale of a firearm from such inventory thereafter to a licensee, a former licensee (or responsible person of such licensee) who resells any such inventory, may be presumed to be engaged in the business under section 478.13. Furthermore, former licensees must not continue to engage in the business of importing, manufacturing, or dealing in firearms by importing or manufacturing additional firearms for purposes of sale or distribution, or purchasing additional firearms for resale (i.e., "restocking").

ATF remains committed to assisting former licensees in complying with Federal firearms laws. If you have questions, please contact your local ATF office.

**CURTIS GILBERT**    Digitally signed by CURTIS GILBERT
Date: 2024.11.05 15:26:25 -05'00'

Curtis W. Gilbert
Deputy Assistant Director, Industry Operations
Field Operations